34814. TUCKER v. THE STATE.

HALL, Justice.

William Boyd Tucker, Jr., was indicted for murder, armed robbery, kidnapping with bodily injury and aggravated sodomy in connection with the August 21, 1977 slaying of Kathleen Perry. After the state presented its evidence, the trial court directed a verdict of not guilty of aggravated sodomy. The other counts of the indictment were submitted to the jury, which convicted appellant of murder, robbery by intimidation and kidnapping with bodily injury. In the sentencing phase of the trial, the jury imposed a death sentence as punishment for murder, finding as the single aggravating circumstance that the murder was committed while the defendant was engaged in the commission of another capital felony, to wit: kidnapping with bodily injury. The trial court subsequently imposed a sentence of life imprisonment for robbery by intimidation and 20 years for kidnapping with

bodily injury. Tucker appeals from his convictions and from the denial of his motion for new trial.

## I. Guilt-Innocence Phase

1. The evidence introduced at trial authorized the jury to find that after drinking heavily during the day and evening of August 20, 1977, and smoking several joints of marijuana, Tucker went to a Majik Market around 11 p.m. where he drank two more beers and played pinball. After waiting at the store some 45 minutes, Tucker sneaked behind its operator and sole occupant, Kathleen Perry, and stuck his finger in her back. She began putting money from the cash register into a paper bag. Tucker and the victim then got into his red Volkswagen and drove to Pierce Chapel Road. There Tucker killed Kathleen Perry by stabbing her four times.

Reuben Culpepper, Robert McLong, and McLong's sister were driving on Pierce Chapel Road when they passed a red Volkswagen with its lights on, parked in the road. The three saw Tucker in the car and a woman's shoe in the road beside the car. Shortly after passing, McLong and Culpepper decided to return to investigate. The Volkswagen passed them as they returned to the place where it had been parked. At the parking spot, McLong found a vest with a "Majik Market" insignia and then discovered Kathleen Perry's body, face-down in a ditch about 10 feet from the road. The three left, called the police and then returned to Pierce Chapel Road to await the arrival of the police. Shortly after the police reached the scene of the crime, Culpepper saw Tucker returning in the same red Volkswagen. He identified both the car and driver to the police. Tucker was immediately taken into custody. Shortly thereafter, appellant made an incriminating statement, in which he admitted the robbery by intimidation and the kidnapping. In his statement to police, Tucker stated that he could not remember what happened after Perry got out of the car but did recall a knife with long brown handles and lots of blood. At trial, Tucker again confessed to robbery by intimidation and kidnapping but testified that he could not remember a knife or the murder.

In enumeration of error 17, appellant contends that

his convictions and death sentence are contrary to law, justice and equity. We will consider the death sentence in detail below; however, we find that the evidence in the record authorized a rational trier of fact to find appellant guilty beyond a reasonable doubt of murder, kidnapping with bodily injury and robbery by intimidation. Jackson v. Virginia, — U. S. — (99 SC 2781, 61 LE2d 560) (1979); *Stinson v. State,* 244 Ga. 219 (259 SE2d 471) (1979).

2. In enumerations of error 9 and 15, appellant contends that his jury was improperly selected because the record affirmatively shows that thirteen jurors, including Georgia Gaines, were chosen. The poll of the jury after the sentencing phase was by name, and Georgia Gaines' name was not called. Pursuant to Code Ann. § 6-805 (f), this court asked the trial court to certify from memory or after a hearing (1) whether Georgia Gaines was excused from the jury, (2) and if so, why, and (3) whether defense counsel objected. After a hearing, the trial judge determined that Gaines was excused because of her husband's severe illness and that defense counsel either moved for her dismissal or consented to it. There was no error in excusing the juror and proceeding until a panel of twelve and two alternates were selected. *Ozburn v. State,* 87 Ga. 173 (1) (13 SE 247) (1890); *Hanvey v. State,* 68 Ga. 612 (1) (1882).

The supplemental transcript affirmatively shows that Gaines was excused for family illness and not because of any scruples related to imposition of the death penalty. No claim of error under Witherspoon v. Illinois, 391 U. S. 510 (1968), and its progeny exists.

Appellant contends that *Owens v. State,* 233 Ga. 869 (2) (214 SE2d 173) (1975), prohibits this court from using a supplemental transcript, developed through post-trial examination of attorneys or excused veniremen, to determine if veniremen were improperly excused at trial. We do not agree with this expansive reading of the case. In *Owens,* the Witherspoon examination of jurors was not reported in the record and was not available. We refused to allow a wholesale re-examination of veniremen and attorneys to determine basic juror qualifications for a case in which the state asked for and received the death penalty, and jurors were excused because of their

opposition to the death penalty. See *Coker v. State,* 234 Ga. 555 (7) (216 SE2d 782) (1975), death sentence reversed on other grounds, 433 U. S. 584 (1977). In this case, however, the statutory method of completing the record was used only to supply the reason for excuse of one juror, completely unrelated to Witherspoon.

Enumerations of error 9 and 15 are without merit.

3. Appellant enumerates as error the failure of the court reporter to record bench conferences. The record does not reveal whether or not the trial court ever granted appellant's motion to compel recordation of all proceedings, including bench conferences. While we agree that recording all proceedings is the best practice, we cannot reverse this case for failure to do so here. Appellant was obligated both to ensure that his pretrial motion for complete recordation was ruled upon and that if granted, was properly followed. *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976), death sentence vacated on other grounds and remanded, 243 Ga. 244 (253 SE2d 707) (1979).

Moreover, we ruled in *Davis v. State,* 242 Ga. 901 (252 SE2d 443) (1979), that failure to record bench conferences cannot constitute reversible error unless appellant demonstrates harm. The harm appellant attempted to show is that failure to record bench conferences meant that no reason for excusing Georgia Gaines appeared in the record and that such excuse could have been error. Since the supplemental transcript supplies the reason for her excuse (Division 2), it is clear that there was no error. Enumeration of error 1 is without merit.

4. In enumeration of error 8, appellant contends that the trial court erred in overruling the motion for mistrial. The district attorney called James May, who testified that he had been in the Majik Market the night of the murder where he had seen a man playing pinball. The district attorney then asked, "Can you identify this person today?" May replied, "I believe so." The district attorney then asked, "Do you see him here in the courtroom? Seated up here at the table?" Defense counsel immediately moved for a mistrial based upon the suggestive question on identification. The trial court overruled the motion and admonished the jury: "Ladies

and gentlemen of the jury, I have admonished the District Attorney not to suggest to any witness what his testimony should be. And in weighing the testimony of this witness insofar as it relates to identification of any person in this particular case, you would have to consider the suggestion as to where the particular person might have been seated, and determine after all of the evidence that this witness gives, and after a cross-examination of the witness, the credibility and weight you would give to the testimony."

Appellant argues that the trial court erred in overruling the motion for mistrial, but he has not illustrated any error. Appellant admitted in his statement to police and in his testimony at trial that he had been in the Majik Market playing pinball on the night of the slaying. This admission removes any issue from the case relating to the identity of the pinball player. The prosecutor's leading question could not, therefore, prejudice the defendant. See *Hall v. State*, 243 Ga. 207 (1) (253 SE2d 160) (1979). Moreover, the trial court's careful admonition to the jury to weigh the identification testimony in light of the prosecutor's leading question was sufficient to dissipate the harmful effect, if any, of the question.

Enumeration of error 8 is without merit.

5. Appellant argues that several errors occurred in connection with the admission into evidence of the inculpatory statement he made to police shortly after his arrest. We will consider these enumerations together.

At trial, Tucker moved to suppress his statement arguing that it was not voluntarily made and that he had not understood his constitutional rights, especially his right to have the advice of counsel, at the time he made the statement. After holding a hearing outside the presence of the jury, as required by Jackson v. Denno, 378 U. S. 368 (1964), the trial court ruled that the confession was voluntarily made and was admissible.

At the hearing, Detective Mathews testified that he first advised Tucker of his rights at the scene of the crime and that Tucker said he understood them. Detective Mathews stated that he again gave Miranda warnings to Tucker at police headquarters prior to questioning and that he made no threats or promises to Tucker. According

to Mathews, Tucker then confessed, but this statement was not transcribed. Tucker was then readvised of his rights; he signed the waiver of rights form and repeated his story, which was typed as he spoke. Tucker signed this statement. Mathews testified that although Tucker said that he had been drinking, he (Mathews) did not think Tucker was drunk and unable to understand his rights because Tucker's demeanor was that of a normal person and he spoke coherently. Mathews stated that between ten and twenty minutes after signing the statement, Tucker asked that Beverly Kiel, a Columbus attorney, be called for him.

Ronald Jones, the director of the police homicide squad, testified that he had been present during the questioning of Tucker, that Mathews had read Tucker his rights, that no promises or threats had been made to Tucker, and that Tucker was able to speak coherently and did not seem drunk. According to Jones' testimony, he explained to Tucker the preliminary hearing procedure after Tucker had signed his statement. Tucker then asked who his attorney would be, and Jones explained that the court would appoint counsel for Tucker if he could not afford a lawyer. Tucker then asked Jones to call Beverly Kiel. Jones did so, and Kiel then spoke with Tucker. Appellant argues that this testimony demonstrates, at the least, that he did not understand his rights until after he had made his statement.

Appellant testified that at police headquarters, he asked that the police call attorney Beverly Kiel for him but that the police refused to do so until appellant had made a statement. Appellant also called Beverly Kiel as a witness. She testified that she had talked with appellant by telephone early in the morning after the slaying and that he had related to her the circumstances surrounding his making a statement to police. Her testimony about her phone conversation with Tucker was excluded as hearsay and on the ground that any statements made by Tucker were self-serving. The exclusion of this evidence is enumerated as error.

Factual and credibility determinations made at a suppression hearing by the trial court are respected by appellate courts unless clearly erroneous. *Johnson v.*

*State,* 233 Ga. 58 (209 SE2d 629) (1974). Although the testimony was in conflict, there is evidence to support the trial court's determination. We also find no error in the trial court's exclusion of Kiel's testimony. When a witness is impeached by a charge of recent fabrication, prior consistent statements are admissible to rebut the charge. No such impeachment occurred in this case, and appellant's prior consistent statements are, therefore, inadmissible. See *McCord v. State,* 83 Ga. 521 (1) (10 SE 437) (1889); *Crawford v. State,* 139 Ga. App. 347 (228 SE2d 371) (1976).

Appellant also argues that the trial court erred in not permitting him to testify to the jury solely on the issue of the voluntariness of his confession. Appellant has no such right. *Williams v. State,* 231 Ga. 508 (2) (202 SE2d 433) (1973).

Enumerations of error 6, 7 and 10 are without merit.

6. Appellant argues that his conviction for kidnapping with bodily injury violates Georgia's statutory double jeopardy provision, Code Ann. § 26-506, because kidnapping with bodily injury is an included offense of felony murder. Appellant was, however, convicted of malice murder. The jury was not even charged on felony-murder. Kidnapping with bodily injury is not an included offense as a matter of law of malice murder. *Pryor v. State,* 238 Ga. 698, 701 (234 SE2d 918) (1977); *Potts v. State,* 241 Ga. 67 (11) (243 SE2d 510) (1978). In addition, the bodily injury is not included as a matter of fact in the malice-murder conviction since the victim received three knife wounds and other cuts and bruises in addition to the fatal wound. *Id.*

Enumeration of error 11 is without merit.

## II. Sentence Review

As required by Ga. L. 1973, p. 159 et seq., Code Ann. § 27-2537 (c) (1-3), and to complete our consideration of appellant's enumerations of error, we have reviewed the death sentence in this case as we review each case in which a death sentence is imposed. We have considered the aggravating circumstance found by the jury and the evidence concerning the crime and the defendant.

7. Appellant enumerates as error the charge of the

court during the sentencing phase of the trial that required the jury to find the presence of an aggravating circumstance by a preponderance of the evidence.

In its charge on aggravating circumstances, the trial court initially stated the incorrect, preponderance-of-the-evidence test. The court then stated on three different occasions the correct test, that the jury was required to find the presence of an aggravating circumstance beyond a reasonable doubt. The trial court was then apprised of its earlier misstatement and stated to the jury: "[O]n one occasion I inadvertently said find existing the aggravating circumstance by a preponderance of the evidence, that is not the test. I later told you that it's by a reasonable doubt and that is the proper instruction, before you consider the death penalty you must find the existence of the aggravating circumstance beyond a reasonable doubt." We find that the trial court's correction of its error complies with *Salisbury v. State,* 221 Ga. 718 (146 SE2d 776) (1966).

As the jury retired to begin its deliberations, the trial court gave to the jury a verdict form which read: "The following Aggravating Circumstance is submitted by the State of Georgia and must be proved beyond a reasonable doubt before you are authorized to find a verdict recommending the death penalty."

We find that the trial court corrected any misunderstanding which the jury might have had, and that a reasonable trier of fact could not fail to understand that the law required the state to prove the existence of an aggravating circumstance beyond a reasonable doubt.

Enumeration of error 2 is without merit.

8. Appellant argues that the trial court erred by not charging the jury more fully on mitigating circumstances and by not telling the jury that it could recommend a life sentence even after finding an aggravating circumstance.

This court has thoroughly reviewed the instructions of the trial court during the sentencing phase of the trial, and we find that the charge made clear to the jury that it could be merciful and impose a life sentence, even if the jury found the existence of statutory aggravating circumstances. Therefore, the charge of the trial court is not subject to the defects dealt with in *Spivey v. State,* 241

Ga. 477 (246 SE2d 288) (1978); *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1978); *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1978).

Nor did the trial court err, as appellant argues, in failing to single out specific mitigating circumstances in giving its instructions to the jury. *Collier v. State,* 244 Ga. 553 (1979); *Potts v. State,* supra; *Spivey v. State,* supra.

Appellant's assertion that sending written instructions to the jury regarding aggravating circumstances without likewise sending written instructions to the jury regarding mitigating circumstances prejudices the jury by emphasizing the aggravating circumstances is without merit. See *Collier v. State,* supra.

Enumeration of error 3 is without merit.

9. Appellant contends that kidnapping with bodily injury can not be the aggravating circumstance which authorizes imposition of the death penalty. The bodily injury was, in fact, the murder, according to appellant, and the murder can not be used twice — once as the offense and again as the aggravating circumstance. As we indicated previously (Division 6), medical testimony authorized the jury to find that the victim sustained a number of injuries in addition to the fatal wound. The injury producing death and the bodily injury are not identical, and the aggravating circumstance is supported by the record. *Pryor v. State,* 238 Ga. 698, supra.

Enumeration of error 12 is without merit.

10. Appellant argues that the trial court erred in not submitting to the jury in writing the *entire charge* given during the sentencing phase. The trial court instead gave to the jury a verdict form which indicated which statutory aggravating circumstance was charged by the state, that the circumstance was required to be found beyond a reasonable doubt, a place for the aggravating circumstance to be entered, if found, and additional places for the jury to indicate whether or not they recommend the death penalty.

Code Ann. § 27-2534.1 (c) provides that "the statutory instructions as determined by the trial judge to be warranted by the evidence shall be given in charge and *in writing* to the jury for its deliberation." We have in the

past approved the use of a verdict form which accurately and succinctly summarizes the trial court's oral instructions to the jury. See *Spraggins v. State,* 243 Ga. 73 (2) (252 SE2d 620) (1979); *Collins v. State,* 243 Ga. 291 (10) (253 SE2d 729) (1979). We find that the written instructions given in this case complied with the statutory requirement.

Enumeration of error 20 is without merit.

11. Appellant enumerates as error the trial judge's response to a question from the jury during the sentencing phase regarding how soon Tucker would be paroled if he were sentenced to life imprisonment. After beginning its deliberations, the jury returned to the courtroom, and its foreman asked, "What is the period which must expire before one is eligible for parole?" The trial court responded, "I'm sorry, ladies and gentlemen, the Court cannot answer that question, or help you at all on that. You'll have to retire." Defense counsel did not object to this response, and the jury retired to finish its deliberations.

Appellant argues that Code Ann. § 27-2206 establishes the legislative policy that a jury should not consider the possibility of parole or clemency in its deliberations. In *McGruder v. State,* 213 Ga. 259 (7) (98 SE2d 564) (1957), this court reversed a conviction because the trial court, in response to a question from the jury, stated that the defendant would serve whatever sentence was imposed by the jury "unless and until it is disturbed by the parole or pardon board." This court reasoned that the reference by the trial court to the board of pardon and parole might have influenced the jury away from a recommendation of mercy.

In Tucker's case, the trial court refused to answer the question or comment in any way about the possibility of parole, thus maintaining the neutrality required by statute. We find that *Thomas v. State,* 240 Ga. 393 (6) (242 SE2d 1) (1977), establishes that a trial court's flat refusal to answer a question about parole is not improperly suggestive and is not error.

Enumerations of error 4 and 5 are without merit.

12. Appellant argues that the sentence of death was imposed under the influence of prejudice or passion or

other arbitrary factor in that the court erred in failing to grant a change of venue because of prejudicial pretrial publicity. He asserts further that no defendant in Muscogee County in a case involving the sex-related murder of a woman and for which the district attorney was seeking the death penalty could receive a fair trial because at the time of the trial, a number of unsolved strangulation murders of women were terrorizing the community. A review of the voir dire examination reveals that those jurors who had been exposed to pretrial publicity regarding the crime with which appellant was charged or the strangulation murders stated that they could lay aside any impression or opinion which they might have formed and render an opinion based upon the evidence. Irvin v. Dowd, 366 U. S. 717 (1960); *Reaves v. State,* 242 Ga. 542 (250 SE2d 376) (1978). (Some veniremen were not questioned about pretrial publicity or about possible bias stemming from the crime situation in Columbus.) Only three veniremen were excused for prejudice from the panel (approximately five percent), and only one of these three was excused for prejudice regarding the unsolved strangulation murders. The low percentage of veniremen excused is clearly insufficient to establish that appellant faced a biased jury. Murphy v. Florida, 421 U. S. 794 (1974).[1]

Appellant also introduced the affidavits of five attorneys (two of whom were appellant's own attorneys) who practiced criminal law in the Columbus area which stated that due to the unsolved strangulation murders and the community's response, no defendant charged with a capital offense in which the state sought the death

---

[1]Compare with *Collier v. State,* supra (20 percent dismissal rate corroborates absence of prejudicial bias); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976) (49 percent dismissal rate corroborates absence of prejudicial bias); *Butler v. State,* 231 Ga. 276 (201 SE2d 448) (1973), cert. den., 420 U. S. 907 (1974) (36 percent dismissal rate corroborates absence of prejudicial community bias); and Irvin v. Dowd, 366 U. S. 717 (1960) (62 percent dismissal rate corroborates actual juror partiality).

penalty could receive a fair trial on the issue of sentence. Motions for change of venue address themselves to the sound discretion of the trial court, and that court's ruling will not be set aside unless the court has manifestly abused its discretion. *Coleman v. State,* supra; *Allen v. State,* 235 Ga. 709 (221 SE2d 405) (1975). In this case, we find no abuse of discretion. Appellant has failed to demonstrate that the circumstances surrounding the trial so prejudiced the jury that its sentence was motivated by passion and prejudice and was not based upon the evidence presented. See Murphy v. Florida, supra.

We find that the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor.

Enumerations of error 14, 15 and 16 are without merit.

13. The evidence beyond a reasonable doubt supports the jury's finding of the statutory aggravating circumstance that the offense of murder was committed while the defendant was engaged in a capital felony, to wit: kidnapping with bodily injury. Code Ann. § 27-2534.1 (b) (2).

Appellant contends that because of the mitigating circumstances presented — that the recent death of appellant's father created severe emotional stress for him, that he was under the influence of alcohol and marijuana at the time he committed the crime, that he had no prior criminal record and that he had no prior history of an aggressive personality — the imposition of the death penalty in this case is cruel and unusual in violation of the Eighth Amendment and is contrary to law and the principles of justice and equity. We do not agree. Although there is evidence that appellant had been drinking on the day of the crime and had been smoking marijuana as well, no evidence was submitted to show that he was incapacitated or unable to form the requisite criminal intent. He waited for the store to clear of customers so his victim would be alone. He robbed the store, kidnapped his victim and held her for approximately one hour before stabbing her to death. Juries have given the death penalty in cases in which the defendant had no prior criminal record and where

evidence of use of alcohol or drugs was offered in mitigation. *Bowen v. State,* 241 Ga. 492 (246 SE2d 322) (1978), death sentence vacated for errors in jury charge and remanded for resentencing 244 Ga. 495, death sentence reimposed and affirmed; *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974).

Enumeration of error 19 is without merit.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. We find the following similar cases listed in the appendix support affirmance of the death penalty. Appellant's sentence to death is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

ARGUED JUNE 13, 1979 — DECIDED NOVEMBER 21, 1979.

*Richard O. Smith,* for appellant.

*William J. Smith, District Attorney, J. Gray Conger, Assistant District Attorney, Arthur K. Bolton, Attorney General, W. Davis Hewitt, Staff Assistant Attorney General,* for appellee.

APPENDIX.

*Collier v. State,* 244 Ga. 553 (1979); *Bowen v. State,* 244 Ga. 495 (1979); *Stanley v. State,* 240 Ga. 341 (241 SE2d 173) (1977); *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441) (1973).