## 36298. CAPE v. THE STATE.

NICHOLS, Justice.

Garnett Cape, the appellant, was convicted and sentenced to death by a jury in Franklin County Superior Court for the May 17, 1979, murder of Karen Dove. His case is now before this court on direct appeal and for mandatory review of the death sentence.

### I. *Summary of the Evidence.*

From the evidence presented at trial, the jury was authorized to find the following facts:

The appellant, a 56-year-old male, was the uncle of the victim's mother. He was well acquainted with the victim's family. The victim's father and the appellant had hunted and fished together often. He had socialized with the victim's family on many occasions, and had worked with the victim's brother. He had developed a close relationship with all the members of the family, including the victim, a 15-year-old high school student.

Approximately three months prior to the murder, the appellant had been told by the victim's mother to stay away from the victim. The mother testified that the appellant "seemed a little too interested in her." The victim was also told to stay away from the appellant. In response, the appellant ceased visiting the family but continued to see the victim's father and brother at their places of employment.

The appellant had promised to buy the victim an expensive car. They had looked at the car together. On the 14th of May, the appellant had signed a purchase order. He had asked for a delay in delivery in order to get funds from a Texas bank. It was later

established at trial that the appellant did not have such an account.

On the morning of the murder, the appellant drove the victim and her friend, Tammy Lee Dickerson, to school. He talked to the victim alone in the car for a few minutes after her friend went into the school. The victim was last seen alive leaving school at approximately 3:15 p.m.

At approximately 4:45 p.m., the appellant came into the victim's brother's place of employment and told him he had "lost" his sister. The victim's brother noticed that appellant was frightened, nervous, and had cuts on his hands and scratches on his face.

The appellant explained that he had picked up the victim after school, and had taken her to the courthouse to get her birth certificate, which was required to enable her to obtain a learner's driving permit. He testified that she went into the courthouse but didn't come out, and although he had looked for her, she was missing.

The victim's brother then began to search for his sister. The appellant had the victim's brother drive him to see a classmate of the victim. Appellant asked her whether the victim was in a good mood that day. Thereafter, the appellant went to the victim's father and, in tears, told him the same story. In response, the victim's father told the appellant that, "You knowed you wasn't suppose to pick her up," and the appellant replied, "Yeah, I'll never bother her again, I'll never buy her nothing else."

It was established that the victim's mother had gotten the victim a birth certificate and learner's permit the day prior to the murder.

The victim's brother accompanied by Tammy Lee Dickerson and another young female continued to search for the victim. He had gone to the appellant's house, but finding no one home had not entered. Later, the victim's brother and his companions returned to the appellant's house. He found a note on the back door which read, "Gone to Anderson. Garnett." The victim's brother then broke into the house through the front door. He found the front room and kitchen in an unusually neat and clean condition.

The victim's friend, Tammy Lee Dickerson, found the victim's body upon entering a bedroom. The victim had been beaten and stabbed to death. Her clothes were in disarray, so that she was partially nude. The body had been wrapped in a sheet of black plastic in such a manner that only the upper torso was exposed.

The local authorities were immediately notified. Close examination of the crime scene revealed bloodstains on the kitchen cabinets, door and ceiling. Attempts had been made to remove them. A mop, towels and male clothing were found with blood stains on them. The defendant's watch, with blood stains on the band, was also found. The blood stains were of the same international blood type as

that of the victim. A metal pipe belonging to the appellant was recovered and subsequently determined to be the weapon used to beat the victim.

The appellant was arrested that night as he drove through Hartwell, Georgia. The officers found a loaded pistol under the seat of appellant's car and the appellant later made the statement that "if he'd of known that the Hartwell Police would — had've done a good job of it and shot him, that he would've pulled his pistol up."

The appellant testified in his defense. He repeated the statement he told the victim's brother and father. He further testified that he later returned home and found the victim lying face down and fully clothed in his kitchen; that he tried to wipe the blood from her face but became sick; that although he did not know if the victim was dead or alive he did not call anyone but instead left to go to his sister's house in Hartwell, Georgia, to tell her.

The evidence will be examined in more detail as necessary in addressing appellant's enumerations of error.

## II. *Enumerations of Error.*

1. Appellant first asserts that the trial court erred in admitting eight photographs of the victim's body. He argues that these photographs were cumulative of testimony of other witnesses, and were unnecessarily prejudicial and inflammatory. This court does not agree. Each depicted the nature, extent and location of the wounds, the extent of the disarray of the victim's clothing, or were illustrative of the crime scene. It is well settled that photographs which are relevant and material to issues in the case are not excludable on the grounds that they would inflame the minds of the jurors, nor are they excludable on the ground that they are corroborative or cumulative of other evidence. *Tucker v. State,* 245 Ga. 68 (263 SE2d 109); *Mooney v. State,* 243 Ga. 373 (254 SE2d 337) (1979); *Green v. State,* 242 Ga. 261 (249 SE2d 1) (1978), rev. other grounds 442 U. S. 95 (99 SC 2150, 60 LE2d 738) (1979).

2. After appellant was arrested and given his Miranda warnings, the authorities asked him if he wanted to make any statements. He replied to the effect that he'd rather not; that he'd rather talk to the Sheriff when he got to the jail. The trial court admitted this testimony. Appellant argues that the testimony complained of was an impermissible comment on his right to remain silent and therefore ran afoul of the rule in Doyle v. Ohio, 426 U. S. 610 (96 SC 2240, 49 LE2d 91) (1976). Pretermitting the question of whether or not defense counsel preserved the point by proper objection during the trial, this court holds there is no merit in appellant's contention that the testimony denied him his right to remain silent.

The district attorney did not stress appellant's silence in an attempt to infer guilt, nor was the jury ever told that the appellant's silence could be used for impeachment purposes, much less as evidence of guilt. The testimony was elicited by the state upon direct examination and was not used for impeachment purposes, as was the case in Doyle v. Ohio, supra.

The comment of the witness was not directed to any particular statement or defense offered by the appellant. The election not to make a statement, but to wait and talk to the sheriff, was made after the incriminating statement about appellant's having considered whether to allow the police to shoot him. Furthermore, the comment on temporarily remaining silent was made during a narrative on the part of the authorities of a course of events. The remark apparently was not intended to, nor did it have the effect of, being probative on the guilt or innocence of the defendant. See *Smith v. State,* 140 Ga. App. 385 (231 SE2d 83) (1976). To reverse a conviction, the evidence of the defendant's election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury. No such situation exists here. *Smith v. State,* 244 Ga. 814 (262 SE2d 116) (1979). Compare *Clark v. State,* 237 Ga. 901 (230 SE2d 277) (1976). Furthermore, appellant's exculpatory story was "transparently frivolous" and the evidence of guilt is overwhelming. Chapman v. United States, 547 F2d 1240 (5th Cir. 1977).

3. In his third enumeration of error, the appellant asserts that the trial court erred in allowing the sheriff, who had been listed as the prosecutor, to testify after the rule of sequestration had been invoked. Appellant argues that the sheriff should have been called as the state's first witness, although no objection was made at the time the rule was invoked as to sequence of witnesses. Upon assertion by the district attorney that the witness needed to be called at that time in order to preserve the orderly presentation of the evidence, the trial court specifically exercised its discretion and allowed the witness to testify. This enumeration of error is without merit. *Fouts v. State,* 240 Ga. 39 (239 SE2d 366) (1977); *Larkins v. State,* 230 Ga. 418 (197 SE2d 367) (1973); see *O'Dillon v. State,* 245 Ga. 342 (265 SE2d 18) (1980).

4. As part of his defense during the guilt-innocence phase of the trial, appellant introduced evidence of good character. The trial court upon its own motion held defense counsel to the proper questions. Appellant contends in his fourth enumeration of error that the judge's remarks amounted to an impermissible expression of opinion. As specific examples the trial court ruled that one question was leading. Later, the trial court stopped a witness from testifying by

stating, "she said she's not familiar with it."

"It is the duty of the trial judge to control the trial of the case and to insure a fair trial to both sides on the disputed issues in the case. Sometimes this requires interference by the court with the conduct of counsel or with a witness in the trial." *Dyke v. State,* 232 Ga. 817, 825 (209 SE2d 166) (1974). The trial judge has broad discretion in handling such matters and such discretion will not be interfered with unless manifestly abused. *Dyke v. State,* supra. This court has carefully examined the comments of the trial judge and has concluded that the trial judge did not abuse his discretion. Nor do we find an improper expression or intimation of his opinion as to evidence of the guilt of the accused. *Thomas v. State,* 240 Ga. 393 (242 SE2d 1) (1977).

5. Appellant complains in his fifth enumeration of error that the trial court erred in failing to grant a mistrial after a witness testified to specific acts of bad character. The state in response to the defendant's character witnesses called his former daughter-in-law and elicited testimony about sexual advances made to her by the defendant. Defense counsel cross-examined the witness and elicited responses favorable to the defense. However, after two other witnesses had testified, the defense counsel objected at a bench conference to her testimony and moved for a mistrial. While refusing to grant a mistrial, the trial judge agreed that the testimony was inadmissible and instructed the jury to disregard it. By failing to object contemporaneously with the testimony, and by proceeding to cross-examine the witness, trial counsel waived the error. However, pretermitting waiver, the decision of whether to grant a motion for mistrial lies within the sound discretion of the trial judge, and his judgment will not be disturbed on appeal absent a showing of abuse of discretion. *Sims v. State,* 243 Ga. 83 (252 SE2d 501) (1979); *Patterson v. State,* 239 Ga. 409 (238 SE2d 2) (1977). Under the circumstances of this case, we find no abuse of discretion. See *Tucker v. State,* supra.

6. During the trial, the state offered into evidence the sheet of black plastic upon which the body had been found. It was brought into the courtroom in a plastic bag. The evidence had a strong, nauseating odor which permeated the courtroom. Defense counsel objected on the grounds of prejudice and relevancy. After its admission over objection, defense counsel agreed that the sheet of plastic would not be removed from the bag, but the sheriff was allowed to testify as to the bag's content. The evidence was material and relevant. It was part of the crime scene and supported the state's theory of concealment and intent to dispose of the body. Being relevant evidence, its admission was not error. See *Green v. State,* supra, Division 1 of this opinion.

7. In his seventh enumeration of error, appellant contends that the trial court erred in instructing the jury during the guilt-innocence phase of the trial as follows: "... you are made by the law the exclusive judges of the credibility of the witnesses and the weight you shall give their testimony. That applies to all witnesses in this case, every person that sat in this chair, everyone. It applies to all of them."

The trial judge then instructed the jury not to consider evidence or testimony which had been ruled out or stricken from the record. Appellant argues that such a charge gave conflicting rules of law and was erroneous. Considering the charge as a whole, the instructions are not conflicting. This enumeration of error is without merit.

8. In his eighth enumeration of error, appellant asserts that the court erred in instructing the jury during the guilt-innocence phase of the trial as follows: "Now, ladies and gentlemen of the jury, a conviction must not rest upon suspicion, conjecture, or possibility of guilt. Where all the facts and circumstances of the case and all reasonable deductions therefrom present two theories, one of innocence and the other of guilt, and if the jury so finds, the jury would be authorized and should acquit the defendant. *On the other hand, should you find that the state has proven beyond a reasonable doubt every material allegation in the indictment, in such case you would be authorized and should convict the defendant.* " (Emphasis supplied.)

Appellant argues that the emphasized portion of the instruction restricts the jury to a consideration of the State's evidence, and the fact that the judge later instructed the jury to consider the defendant's evidence in rendering a verdict did not correct the alleged erroneous instruction, nor remove the injury resulting therefrom.

In support of his argument, the appellant relies upon *Salisbury v. State,* 221 Ga. 718 (146 SE2d 776) (1966), hereinafter referred to as the first *Salisbury* case. The second *Salisbury* case, 222 Ga. 549 (150 SE2d 819) (1966), dealt with other matters, whereas the third *Salisbury* case, 223 Ga. 414 (156 SE2d 48) (1967), is in point.

In the first *Salisbury* case, this court held that to charge that " 'if the State has proved these material allegations beyond a reasonable doubt, the defendant on trial would be guilty and it would be your duty to so say by your verdict' " was error. It was held that this excerpt restricted the jury to consideration of only the State's evidence even though the judge later instructed the jury to consider the defendant's evidence in arriving at a verdict.

However, we find that the case at bar is clearly distinguishable from the first *Salisbury* case, supra, and is controlled by the third

*Salisbury* case, supra. In the case at bar, the excerpt must be construed in light of the preceding sentence which instructed the jury to consider all the facts and circumstances of the case in determining if there were conflicting theories. It repeatedly has been held that upon consideration of whether a portion of the charge complained of was erroneous, the reviewing court should examine the entire charge. If any part of the charge plainly tempers and modifies another, so that the ultimate sense and impression are correct, there is no error. Prior to giving the excerpt complained of the trial court charged on reasonable doubt, burden of proof and presumption of innocence. As part of its charge on burden of proof (the theory of law involved in the excerpt complained of) the trial court charged that "in determining whether the state has carried this burden, you would consider *all of the evidence which has been introduced to you here during the trial.*" Therefore, upon examination of the entire charge it is clear that the jury could not have failed to understand that it was bound to consider all of the evidence adduced upon the trial in determining whether to convict or acquit the accused. *Favors v. State,* 228 Ga. 196 (184 SE2d 568) (1971); *Breland v. State,* 134 Ga. App. 259 (214 SE2d 186) (1975). See *Anderson v. State,* 226 Ga. 35 (172 SE2d 424) (1970).

9. In enumerations of error nine and ten, appellant contends that the trial court erred in its instructions to the jury during the sentencing phase of the trial in that the court failed to define adequately the term "mitigation." He further contends that the trial court erred in failing to specify mitigating circumstances and provide the same in writing to the jury.

The trial judge adequately instructed the jury as to the definition of "mitigating circumstances." "Mitigation" is a word of common meaning and usage and it is not error to charge its definition. See *Dyke v. State,* supra; *Smith v. State,* 236 Ga. 5 (222 SE2d 357) (1976).

It is not required that specific mitigating circumstances be singled out by the court in giving its instructions to the jury. *Tucker v. State,* 244 Ga. 721 (261 SE2d 635) (1979); *Collier v. State,* 244 Ga. 553 (261 SE2d 364) (1979) and cites. Nor is there a right to have written instructions sent to the jury as to mitigating circumstances. *Tucker v. State,* supra; *Collier v. State,* supra; *Spraggins v. State,* 243 Ga. 73 (252 SE2d 620) (1979); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979).

10. The remaining enumerations of error more properly address themselves to sentence and will be considered in our sentence review.

### III. *Sentence Review.*

In our sentence review, we have considered the aggravating

circumstance found by the jury and the evidence concerning the crime and the defendant. We have reviewed the sentence as required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)) as we have in each case involving the death penalty under this statute. We find that the evidence factually substantiates the verdict and supports a finding of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

11. Appellant asserts that the sentence of death was imposed under the influence of passion, prejudice and other arbitrary factors because of the cumulative effect of incompetent and inadmissible evidence submitted by the state. He also argues that the jury was impassioned because of the particularly horrible nature of the crime and the age of the victim. After a thorough review of the transcript and record in this case as mandated by our statute, we do not agree. The evidence submitted by the state being found admissible, appellant's enumeration has no merit. Nothing in the record indicates that the jury abdicated its oath and decided sentence upon passion, prejudice or other arbitrary factors. Rather, the finding of the aggravating circumstance set forth below was a logical and rational result based upon the vile, horrible and inhuman nature of the crime. See Division 13 below. The appellant attempts to assert the "Private Slovik Syndrome" for the first time on appeal. This argument has been raised before and decided adversely to appellant. *House v. Stynchcombe,* 239 Ga. 222 (236 SE2d 353) (1977). We find that the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor.

12. In his final enumeration of error, the appellant asserts that the death penalty must be set aside because the trial court's instructions to the jury in the sentencing phase of the trial did not provide guidance in the interpretation of Code Ann. § 27-2534.1 (b) (7), citing the recent case of *Godfrey v. Georgia,* 446 U. S. —— (100 SC 1759, 64 LE2d 398) (1980). While the trial court did not give a limiting charge on § 27-2534.1 (b) (7), we hold that a limiting charge was not required under the facts of this case. *Godfrey v. Georgia,* supra; *Hance v. State,* 245 Ga. 856 (268 SE2d 339) (1980). As the Supreme Court of the United States said in *Godfrey v. Georgia,* supra, "the validity of the petitioner's death sentence turns on whether, in light of the facts and circumstances of the murders ..., the Georgia Supreme Court can be said to have applied a constitutional construction of [27-2534.1 (b) (7)]." As noted in *Godfrey v. Georgia,* supra, the jury there returned a finding that the murder was "outrageously or wantonly vile, horrible and inhuman." Torture or aggravated battery was not found as in the case at bar. See Division 13 below. Therefore, the Supreme Court of the United States was

required to speculate as to the jury's interpretation of the first clause of the statute. As that court said, "There is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death penalty."

However, in the case at bar, the jury's finding of the second clause of the statute is supported by the evidence beyond a reasonable doubt, and speculation as to the jury's interpretation of the statute by the reviewing court is not required, thereby allowing rational review of the death sentence. *Godfrey v. Georgia,* supra, is therefore distinguishable from the case at bar, and under the particular facts of this case a limiting charge was not required. See *Hance v. State,* supra; *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976); *Lamb v. State,* 241 Ga. 10 (243 SE2d 59) (1978). This enumeration of error is without merit.

13. The jury found the following aggravating circumstance:

"The murder was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind and/or aggravated battery to the victim."

Under the evidence in this case, the victim was beaten with an iron pipe. She sustained multiple skull fractures and the force of the attack was so great that the skull was fractured almost in half. The victim sustained bruises on the left shoulder and neck probably as a result of being choked. The tongue and upper lip were bruised and part of the lower lip was swollen. After the victim sustained the head injuries, she was stabbed five times in the back and twice in the chest. Death ensued from the loss of blood.

When the body was found, it was in a partial state of undress. One breast was exposed and the pants the victim was wearing were unzipped. Forensic evidence suggested the presence of seminal fluid in the oral cavity, but was not conclusive. However, the state of undress, bruising about the mouth, and the suggested presence of seminal fluid would authorize a finding of serious sexual abuse. The victim was a 15-year-old female child.

By any rational standard the murder was outrageously or wantonly vile, horrible or inhuman. In that respect this murder is distinguishable from ordinary murders in which the death penalty is not appropriate. *Hance v. State,* supra; *Patrick v. State,* 245 Ga. 417 (265 SE2d 553) (1980). The victim did not die instantaneously, and while she was distantly related to the appellant, this is not a domestic murder. Nor did the victim give appellant any reason to assault her, and she was not subjecting the appellant to any emotional trauma. The appellant made an elaborate attempt to hide the crime. See *Godfrey v. Georgia,* supra. In *Hance v. State,* supra, this court set out standards which must be met in order to constitutionally apply §

27-2534.1 (b) (7) in light of *Godfrey v. Georgia,* supra. We held that torture, as the term is used in the statute, occurs when the victim is subjected, as in this case, to serious physical abuse before death. We also held that serious sexual abuse may be found to constitute serious physical abuse. The evidence supports a finding of serious physical abuse and serious sexual abuse constituting serious physical abuse. A defendant who tortures the victim or subjects the victim to an aggravated battery before killing the victim can be found to have a depraved mind. The age and physical characteristics of the victim may be considered in determining depravity of mind.

We find that the evidence factually substantiates and supports the finding of the statutory aggravating circumstances and the sentence of death by a rational trier of fact beyond a reasonable doubt. *Jackson v. Virginia,* supra.

We have thoroughly reviewed the instruction of the trial court during the sentencing phase of the trial and find that the charge was not subject to the defects dealt with in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1978), and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1978).

The murder was a savage sexual assault upon a young child. It was not a crime of passion such as to mitigate the imposition of the death penalty as appellant asserts. The fact that the victim knew and trusted the appellant far from mitigating the crime, as appellant argues, makes the murder more outrageously or wantonly vile, horrible or inhuman.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. Contrary to appellant's position, juries have given the death penalty in cases in which the defendant had no prior criminal record. *Tucker v. State,* 244 Ga. 721, supra; *Bowen v. State,* 241 Ga. 492 (246 SE2d 322) (1978); *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974).

We find that the following similar cases listed in the appendix support the affirmance of the death penalty. Appellant's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 7, 1980 — DECIDED
OCTOBER 8, 1980.

*Floyd W. Keeble, Jr.,* for appellant.
*J. Cleve Miller, District Attorney, Lindsay A. Tise, Jr., Assistant District Attorney, Arthur K. Bolton, Attorney General, Mary Beth*

*Westmoreland, Staff Assistant Attorney General,* for appellee.


APPENDIX.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gibson v. State,* 236 Ga. 874 (225 SE2d 63) (1976); *Griggs v. State,* 241 Ga. 317 (245 SE2d 269) (1978); *Presnell v. State,* 241 Ga. 49 (243 SE2d 496) (1978); *Johnson v. State,* 242 Ga. 649 (250 SE2d 394) (1978); *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1978); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1978); *Bowen v. State,* 244 Ga. 495 (260 SE2d 855) (1979); *Tucker v. State,* 244 Ga. 721 (261 SE2d 635) (1979); *Patrick v. State,* 245 Ga. 417 (265 SE2d 562) (1980); *Thomas v. State,* 245 Ga. 688 (266 SE2d 499) (1980).