A02A1323. IN THE INTEREST OF J. C., a child.
(572 SE2d 21)

RUFFIN, Presiding Judge.

Concluding that 15-year-old J. C. committed the offense of reckless driving, the juvenile court adjudicated her delinquent. J. C. appeals, challenging the sufficiency of the evidence and the fundamental fairness of the adjudicatory proceeding. Although we find the evidence sufficient, we agree with J. C. that the proceeding was fundamentally unfair and reverse.[1]

1. In reviewing J. C.'s challenge to the sufficiency of the evidence, "we construe the evidence and all inferences drawn therefrom in favor of the juvenile court's decision to determine if a rational trier of fact could have found, beyond a reasonable doubt, that [J. C.] committed the act charged."[2] Viewed in this light, the evidence shows that on June 18, 2001, Sergeant Mark Terrell observed a vehicle driven by a young female traveling at a high rate of speed northbound on I-75 in Lowndes County. According to Terrell, the vehicle was "passing cars like a rocket[,] [a]nd it was flying down the highway." Although no rain was falling at the time, the road was wet from an earlier rain and "a lot of mist [was] coming from the other cars."

Terrell, who was in a southbound lane, measured the vehicle's speed on two occasions with his radar unit. Both times, the speed registered 112 mph. Terrell contacted a police officer stationed on the

---

[1] Double jeopardy principles prevent the State from retrying a juvenile when it fails to present sufficient evidence to support a delinquency finding. See *Lang v. State*, 201 Ga. App. 836, 838 (2) (412 SE2d 866) (1991); see also *In the Interest of J. B. W.*, 230 Ga. App. 673, 675 (497 SE2d 1) (1998) (double jeopardy protection applies to delinquency proceeding). Thus, although errors in the juvenile proceeding require reversal, we also must address J. C.'s argument regarding the sufficiency of the evidence. See *Lang*, supra.

[2] *In the Interest of A. A.*, 253 Ga. App. 858, 859 (1) (560 SE2d 763) (2002).

northbound side of the interstate, described the car and the driver, and asked that officer to make the traffic stop. When Terrell arrived at the stop, he identified the vehicle, confirmed that the driver, J. C., was the individual he had seen driving the car earlier, and noted that J. C.'s mother was also in the car. He informed J. C.'s mother that he had clocked the vehicle's speed at 112 mph and, at the mother's request, checked his radar unit for accuracy. According to Terrell, the radar unit "tested by the factory standards as perfect." Terrell then cited J. C. for speeding and gave her mother a ticket for allowing J. C., who only had a learner's driving permit, to speed.

On June 21, 2001, the Lowndes County District Attorney's Office petitioned to have J. C. adjudicated delinquent. The petition alleged that J. C. committed the offense of reckless driving by operating the vehicle "in reckless disregard for the safety of a person or property in that [she] exceeded the speed limit in excess of forty-two (42) miles per hour." Following a hearing, the juvenile court judge granted the petition and found J. C. to be delinquent.

Under OCGA § 40-6-390, "[a]ny person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving." On appeal, J. C. argues that, although the State presented evidence that she was speeding, it failed to show that other drivers were endangered by her conduct, and thus did not prove reckless driving. We disagree.

Sergeant Terrell testified that J. C. was "flying" down I-75, passing cars like a "rocket," on a wet and misty roadway. His radar unit registered her speed at 112 mph, 42 mph over the maximum speed limit allowed on an interstate.[3] This evidence "showed a sufficient disregard for the safety of . . . the other drivers on the roadway to authorize the [trier of fact] to find beyond a reasonable doubt" that J. C. committed the delinquent act of reckless driving.[4] Accordingly, J. C.'s challenge to the sufficiency of the evidence lacks merit.

2. Nevertheless, we must reverse the juvenile court's adjudication of delinquency and remand for a new delinquency hearing. The adjudicatory phase of a delinquency proceeding is " 'the functional equivalent of the trial in the regular criminal or civil process.' "[5] Thus, a "juvenile charged with delinquency is entitled by right to have the court apply those common law jurisprudential principles which experience and reason have shown are necessary to give the

---

[3] See OCGA § 40-6-181 (b) (2).

[4] *Odum v. State*, 255 Ga. App. 70, 71-72 (2) (564 SE2d 490) (2002); see also OCGA § 40-6-390.

[5] *D. C. A. v. State of Ga.*, 135 Ga. App. 234, 237 (2) (217 SE2d 470) (1975).

accused the essence of a fair trial."[6] Those principles include the privilege against self-incrimination and the right of cross-examination.[7]

The record shows that Lowndes County sent the delinquency petition and summons to J. C. and her mother at the Savannah, Georgia, address listed on J. C.'s learner's permit. The family, however, had moved to Florida and did not receive the summons until five days before the adjudicatory hearing. J. C.'s father tried to contact an attorney while driving to Lowndes County on the day of the hearing, but was unable to retain counsel for J. C. that day. When J. C. and her parents reached the juvenile court, she and her father signed an "Acknowledgment of Rights" form, on which they indicated that she wanted a lawyer. The form advised them that J. C. had the right to "question anyone who might testify against [her]" and indicated that she did "not have to admit to the charges against [her] or even say anything at all, and that if [she chose] not to say anything it [would] not be used against [her]."

Sergeant Terrell was the only witness called at the delinquency proceeding. After the State examined Terrell, the juvenile court asked the officer several questions and then directed a question to J. C., who answered. At that point, the court stated, "[w]ell, anything y'all want to say about this?," and a court official informed the judge that J. C. wanted an attorney.[8] The judge asked J. C.'s parents why they had not hired an attorney.[9] J. C.'s father explained that he had unsuccessfully tried to contact a lawyer on the way to the hearing.

Refusing to halt the proceedings, the juvenile judge stated that J. C. and her parents were responsible for hiring an attorney, and their failure to retain one "by the time of the court date [was] just too bad." The judge then asked J. C. — who had not been sworn as a witness — "where do you get off thinking you have the ability to drive 112 miles an hour." J. C. answered several of the court's questions about the incident, and the court asked J. C.'s mother "what [she had] to say about it." J. C.'s mother — who also was not sworn — responded to the court's inquiries, as did her husband. Without further comment, the court then found J. C. to be delinquent, as alleged in the petition.

---

[6] *In the Interest of Q. J. A.*, 255 Ga. App. 160, 161 (1) (564 SE2d 770) (2002); see also *In the Interest of C. M. M.*, 244 Ga. 787 (1) (262 SE2d 103) (1979) ("[J]uvenile court delinquency hearings must measure up to the 'essentials of due process and fair treatment.'"); *In the Interest of D. L.*, 228 Ga. App. 503, 506 (2) (492 SE2d 273) (1997) (" '[T]here must be scrupulous adherence to due process requirements in juvenile court proceedings.' ").

[7] See *Q. J. A.*, supra; see also OCGA § 15-11-7 (a), (b) (providing statutory right to cross-examine witnesses and to remain silent in delinquency proceedings).

[8] The juvenile court judge did not ask J. C. or her parents whether they desired representation before Sergeant Terrell testified.

[9] J. C. does not contend that she was indigent and thus entitled to appointed counsel.

On appeal, J. C. argues that the juvenile court gave her no opportunity to cross-examine Sergeant Terrell, the State's only witness, and violated her right against self-incrimination. We agree.[10]

As noted above, juveniles have the right to confront their accusers through cross-examination during a delinquency proceeding's adjudicatory phase.[11] In this case, however, when the juvenile judge finished questioning Sergeant Terrell, he immediately began to examine J. C. and her family about the incident and their failure to hire a lawyer. The court never stopped its own inquiry long enough for J. C. to cross-examine Terrell.

The State contends that the juvenile court did not *prevent* J. C. from asking Terrell questions and notes that J. C. acknowledged her right to cross-examine on the Acknowledgment of Rights form. But a trial court is duty-bound " 'to control the trial of the case and to insure a fair trial to both sides on the disputed issues.' "[12] Despite this duty, the juvenile court did little to protect J. C.'s right to confrontation. The court heard the State's evidence, conducted its own inquiry, and adjudicated J. C. delinquent, without giving J. C. the chance to question Terrell. Under these circumstances, we cannot find the juvenile court's procedures appropriate.

Furthermore, the court's examination of J. C. was improper. Before that examination, the juvenile judge did not advise J. C. of her right to remain silent or warn her about the consequences of forgoing that right. We recognize that the Acknowledgment of Rights form stated that J. C. did not have to speak and that her silence would not be used against her. Nothing in that form, however, indicated that any statements she made could and would be used against her, and the State has pointed to no evidence that J. C. received such a warning from another source.

Any admonishment that a juvenile offender has the right to remain silent must be

> accompanied by the explanation that anything said can and will be used against the individual in court. This warning is

---

[10] J. C. also argues that the juvenile court erred in refusing to grant her a continuance to retain an attorney. According to the State, however, the trial court properly concluded that J. C. failed to exercise reasonable diligence to secure legal representation prior to the hearing and thus waived her right to counsel. See *In the Interest of T. D. W.*, 229 Ga. App. 273, 275 (1) (493 SE2d 736) (1997) (" 'Since a non-indigent [juvenile offender's] right to counsel is predicated upon [her] own diligence, a failure on [her] part to retain counsel may constitute a waiver of the right to counsel.' "). Given the other procedural flaws in the adjudicatory hearing, we need not determine whether J. C. exercised reasonable diligence in attempting to retain counsel.

[11] See *Q. J. A.*, supra; OCGA § 15-11-7 (a).

[12] *Cape v. State*, 246 Ga. 520, 524 (4) (272 SE2d 487) (1980); accord *Robinson v. State*, 246 Ga. App. 576, 579 (3) (541 SE2d 660) (2000).

needed in order to make [her] aware not only of the privilege, but also of the consequences of foregoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that [she] is faced with a phase of the adversary system — that [she] is not in the presence of persons acting solely in [her] interest.[13]

The trial court erred in examining J. C. without fully advising her that any incriminating statements could and would be used against her.[14]

The adjudicatory phase of a delinquency proceeding should track (or parallel) an adult criminal trial.[15] Few of the juvenile court's procedures in this case, however, met this requirement. J. C., who appeared before the juvenile court pro se, had no chance to cross-examine the only witness called against her, and the court questioned her without ascertaining whether she understood the consequences of waiving her right to remain silent. We further note that the juvenile court judge examined J. C. and her family without placing them under oath. The juvenile court's informal procedures deprived J. C. of a fundamentally fair adjudicatory proceeding. Accordingly, the adjudication of delinquency must be reversed.

3. Given our decision in Division 2, we need not address J. C.'s remaining arguments on appeal.

*Judgment reversed and case remanded. Barnes, J., and Pope, Senior Appellate Judge, concur and concur specially.*

POPE, Senior Appellate Judge, concurring specially.

I concur fully in the majority's opinion, but write separately to note that the necessity of expending judicial resources for a new delinquency hearing in this case could easily have been avoided. The Acknowledgment of Rights form should be revised to include a complete statement of juvenile defendants' rights to avoid similar problems in the future. In addition, juvenile judges must take the time and effort to ensure that the juvenile defendants appearing before them have been apprised of their rights and that those rights are protected during the course of the proceedings.

I am authorized to state that Judge Barnes joins in this special concurrence.

---

[13] (Punctuation omitted.) *K. E. S. v. State of Ga.*, 134 Ga. App. 843, 849 (3) (216 SE2d 670) (1975).

[14] See id. at 848-849.

[15] See *Q. J. A.*, supra; *D. C. A.*, supra.

DECIDED SEPTEMBER 30, 2002.

*Sellers & Mitchell, Mark E. Mitchell, Harold B. Baker*, for appellant.

*J. David Miller, District Attorney, Justo C. Cabral III, Assistant District Attorney*, for appellee.